# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THOMAS J. CANHAM, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 12 C 9297 |
| FAIR COLLECTIONS & OUTSOURCING, INC., | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Thomas Canham ("Canham") brings this action against Fair Collections & Outsourcing, Inc. ("Fair Collections"), asserting (1) that in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("Section 1692"), and the Illinois Collection Agency Act, 225 ILCS 425/9 ("Section 425/9"), Fair Collections tried to collect an amount from him greater than was actually due and also (2) that Fair Collections violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) ("Section 1681s-2(b)"), by reporting an inaccurate debt to credit bureaus.  To understand the basic nature of those claims, a brief recap of their background follows.[1]

After Berkshires at Hoffman Estates ("Berkshires") evicted Canham for nonpayment of rent and secured a judgment against him for the balance due, it hired Fair Collections to recover not only the judgment amount but also additional fees and rent for the months that Canham remained in his apartment following the judgment of eviction.  Canham contends that his underlying debt to Berkshires could not have exceeded the amount of the judgment against him,

---

[1] More detail is provided in the later Statement of Facts.

so that Fair Collections violated the cited statutes by attempting to collect a debt that was greater than the amount actually due and then reporting that greater amount to credit bureaus.[2]

Fair Collections has now filed a Fed. R. Civ. P. ("Rule") 56 motion for summary judgment on all counts. Its motion is granted for the reasons set out more fully below.

## Summary Judgment Standard

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor (Lesch v. Crown Cork & Seal Co., 282 F. 3d 467, 471 (7th Cir. 2002)). Courts "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts" in resolving motions for summary judgment (Payne v. Pauley, 337 F. 3d 767, 770 (7th Cir. 2003)). But a nonmovant must produce more than "a mere scintilla of evidence" to support the position that a genuine issue of material fact exists, and "must come forward with specific facts demonstrating that there is a genuine issue for trial" (Wheeler v. Lawson, 539 F. 3d 629, 634 (7th Cir. 2008)). Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). What follows is a longer summary of the relevant facts.

---

[2] Canham also now maintains that the debt Fair Collections sought to collect from him was higher than what he owed, though in that respect his memorandum related to the current motion has departed materially from his original position, which was predicated solely on the existence of a prior judgment against him. More on this subject later.

## Statement of Facts[3]

Canham leased a residential apartment from Berkshires in December 2010 (¶ 7). Terms of the lease (1) empowered Berkshires to evict Canham if he defaulted on his rent payments, (2) made Canham liable for monthly rent and utilities if he remained in the apartment after eviction and (3) also made Canham liable for Berkshires' attorneys' fees associated with his default on rental payments (¶¶ 12-14). On August 19, 2011 Berkshires obtained a judgment evicting Canham for his failure to pay rent and awarding Berkshires $3,540.59 in damages for his default on the lease (¶ 15). Following that judgment of eviction Canham remained in the apartment until October 10, 2011 (¶ 16, Ex. F). Berkshires then prepared a final account statement ("Account Statement") asserting that Canham owed it $6,224.87, including not just the amount of the judgment but also its legal fees and post-judgment additional rent and utilities costs (¶¶ 19, 21).

Berkshires hired Fair Collections to recover Canham's debt as calculated in the Account Statement (¶ 20), and Fair Collections then sent a December 9, 2011 letter to Canham requesting payment of the $6,224.87 (Ex. J).[4] Canham initially challenged that amount on the sole basis that it exceeded the $3,540.59 judgment against him (¶¶ 25-26), though his current filing now

---

[3] Abbreviations "C." for "Canham" and "F." for "Fair Collections" are used in citations throughout this opinion. Memoranda are cited "x Mem.," with "x" denoting the memorandum's author. Fair Collections' LR 56.1(a)(3) statement in support of its motion is cited "¶ --," with any citation to Canham's response omitted if it admits the alleged facts, and with exhibits to that statement cited "Ex. --." Canham's First Amended Complaint is simply referred to as "Complaint."

[4] Canham and Fair Collections dispute whether Fair Collections, before it wrote Canham, took reasonable steps to verify that the $6,224.87 figure accurately reflected the amount Canham owed (¶ 22, Ans. ¶ 22). But as discussed more fully below, that dispute is irrelevant because the investigation that Fair Collections conducted after Canham objected satisfied its statutory investigation requirements.

acknowledges that he owed Berkshires more than the judgment amount -- but, he says, owed less than the $6,224.77 figure (C. Mem. 6-9).

Fair Collections investigated Canham's initial response by verifying with Berkshires that the $6,224.87 amount sought accurately reflected the debt Berkshires claimed in the Account Statement (¶¶ 27-29). Thereafter Fair Collections reported to credit bureaus that Canham had an outstanding debt for that amount (¶ 30). In November 2012 Canham filed this lawsuit, claiming that he owed Berkshires less than $6,224.87 and that Fair Collections had violated Sections 1692 and 425/9 by seeking to collect that amount and had violated Section 1681 by reporting that figure to credit bureaus.

## Canham's Section 1692 Claims

Canham first contends that Fair Collections violated three subparts of Section 1692: 1692e, 1692f and 1692g. Section 1692e provides in pertinent part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .
>
>     (2)    The false representation of--
>
>         (A)    the character, amount, or legal status of any debt;
>
>         *      *      *
>
>     (10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .

Section 1692f states in part:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . . .

Finally, Section 1692g provides in part:

> (a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--
>
> (1) the amount of the debt; . . .

All those claims are predicated on the premise that the $6,224.87 sought by Fair Collections did not accurately reflect the amount Canham actually owed to Berkshires. As indicated earlier, Canham has presented a moving target to Fair Collections by changing his position on the proper way that his debt to Berkshires should have been calculated. Thus Canham's initial response to Fair Collections contended only that the amount sought exceeded the amount of Berkshire's judgment against him (¶¶ 25-26). But that position is clearly erroneous for several reasons, not the least of which is Canham's convenient failure to consider the rent and other amounts that he owed for the additional months he remained in the apartment after the judgment of eviction. Backtracking from that untenable position in his memorandum in response to the current motion, Canham has now advanced a new figure somewhere between the amount of the judgment against him and the $6,224.87 sought by Fair Collections (in that regard, Canham asserts that some of the utility charges and other fees assessed by Berkshires should have been rolled into the earlier judgment against him) (C. Mem. 6-8).

Even if Canham were correct that Berkshires miscalculated his debt, Fair Collections still escapes liability because of the "bona fide error" defense defined by Section 1692k(c):

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

Nothing in the record supports any notion that Fair Collections either knew that the amount it sought to collect was inaccurate or otherwise intended to deceive Canham. Fair Collections sought to collect a debt from Canham that accurately reflected the amount Berkshires claimed was due. Although Canham argues that Fair Collections cannot avail itself of the bona fide error defense because its procedures were not reasonably adapted to avoid errors like the one that Canham alleges occurred here (C. Mem. 11-13), analysis shows that Fair Collections' procedures were objectively reasonable.

After Canham disputed his debt, Fair Collections followed its verification procedures by double-checking with Berkshires that the amount sought accurately reflected the figure that Berkshires believed was due. Canham would read Section 1692 to impose a further duty on Fair Collections to investigate and verify independently that the debt Berkshires sought was actually correct and supported by law (C. Mem. 9) -- but that position is plainly unreasonable. As <u>Hyman v. Tate</u>, 362 F. 3d 965, 968 (7th Cir. 2004) succinctly explains, Section 1692:

> does not require collectors to independently verify the validity of the debt to qualify for the "bona fide error" defense.

Here Fair Collections was hired to collect a bill owed to its client and, once Canham disputed the debt, it verified that the amount it was seeking accurately reflected that bill. Because that conduct meets the requirements of the bona fide error defense under Section 1692, Fair Collections' Rule 56 motion must be granted as to that Section.

**Canham's Section 425/9 Claims**

Canham also alleges that Fair Collections' attempt to collect more than he says he owed also violated three provisions of Section 425/9[5]:

> (20) Attempting or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist.
>
> \* \* \*
>
> (26) Misrepresenting the amount of the claim or debt alleged to be owed.
>
> \* \* \*
>
> (29) Collecting or attempting to collect any interest or other charge or fee in excess of the actual debt or claim unless such interest or other charge or fee is expressly authorized by the agreement creating the debt or claim unless expressly authorized by law or unless in a commercial transaction such interest or other charge or fee is expressly authorized in a subsequent agreement. . . .

Canham also contends that Fair Collections' conduct violated Section 425/9.3:

> (a) Within 5 days after the initial communication with a debtor in connection with the collection of any debt, a debt collector or collection agency shall, unless the following information is contained in the initial communication or the debtor has paid the debt, send the debtor a written notice with each of the following disclosures:
>
> (1) The amount of the debt.

But those state law provisions impose no greater duty on debt collectors to investigate the accuracy of a debt than their just-discussed federal cousins in Section 1692. Moreover, 225 ILCS 425/2 (emphasis added) defines "debt" as used in Section 425 to be:

> money, property, or their equivalent which is due or owing <u>or alleged to be due or owing</u> from a natural person to another person.

---

[5] Illinois provides an implied private right of action for violations of Section 425/9 (<u>Sherman v. Field Clinic</u>, 74 Ill. App. 3d 21, 29-30, 392 N.E. 2d 154, 160-61 (1st Dist. 1979)).

By its own terms, then, Section 425/9 does not hold Fair Collections liable for seeking the $6,224.87 because Berkshires <u>alleged</u> that to be the amount of Canham's debt, regardless of whether Berkshires' calculation was ultimately correct. Canham's claims under Section 425/9 must also fail.

### Canham's Section 1681 Claims

Finally Canham alleges that Fair Collections violated Section 1681 because, after Canham disputed the amount that Fair Collections was seeking, it failed to investigate the underlying debt adequately before reporting that debt to credit bureaus (C. Mem. 14-17). Section 1681(b)(1) provides[6]:

> (b) Duties of furnishers of information upon notice of dispute.
>
> > (1) In general. After receiving notice pursuant to section 611(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
> >
> > > (A) conduct an investigation with respect to the disputed information;
> > >
> > > (B) review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2);
> > >
> > > (C) report the results of the investigation to the consumer reporting agency;
> > >
> > > (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

---

[6] Curiously, both Canham and Fair Collections misquote that provision in their submissions by moving the "and" from the end of subsection (D) to the end of subsection (C) while omitting subsection (E) entirely (F. Mem. 9-10, C. Mem. 14-15).

> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--
>
>> (i) modify that item of information;
>>
>> (ii) delete that item of information; or
>>
>> (iii) permanently block the reporting of that item of information.

After Canham disputed the amount owed to Berkshires, Fair Collections responded by verifying that the $6,224.87 it requested from Canham accurately reflected the debt claimed by Berkshires -- and, as is true of all the statutes discussed earlier, there is nothing to suggest that Fair Collections' investigation need have gone any further. It clearly sufficed for Fair Collections to satisfy its Section 1681s-2(b) obligation by reviewing its client's documentation and then reverifying with the client the correctness of the amount sought.

Canham also argues that the Section 1681 duty to investigate an underlying debt before reporting it to credit bureaus is analogous to the reinvestigation requirement imposed on credit bureaus themselves (C. Mem. 15). True enough, that requirement may sometimes include a credit reporting agency's obligation to go beyond the representation of creditors when assessing the validity of a disputed debt, as articulated by <u>Henson v. CSC Credit Servs.</u>, 29 F. 3d 280, 287 (7th Cir. 1994):

> Accordingly, a credit reporting agency may be required, in certain circumstances, to verify the accuracy of its initial source of information . . . .
>
> \* \* \*
>
> Whether the credit reporting agency has a duty to go beyond the original source will depend, in part, on whether the consumer has alerted the reporting agency to

the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable. The credit reporting agency's duty will also depend on the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer.

But to extend that obligation, stemming as it does from the federal statutory regulation of credit reporting agencies, to a debt collector whose activities are comprehensively regulated by a different federal statute that imposes no such obligation would be an impermissible quantum leap. Implied causes of action may be the order of the day in the state courts (or at least may have been 35 years ago when Sherman v. Field Clinic was decided), but they are not welcomed in federal jurisprudence where Congress has fashioned a detailed regulatory scheme that does not include an express statutory remedy (see, e.g., Alexander v. Sandoval, 532 U.S. 276, 286-87 (2001)).

In sum, Cahman's attempt to invoke the Fair Credit Reporting Act against Fair Collections, engaged as it is in a business closely controlled by the Fair Debt Collection Practices Act, involves a totally unwarranted stretch of fundamental federal jurisprudential principles. Like Canham's other claims, it too fails.

## Conclusion

All of Canham's attempted claims here come up empty. There are no genuine issues of material fact that would allow them to survive, so that Fair Collections is entitled to a judgment as a matter of law. Its Rule 56 motion is granted in its entirety, and this action is dismissed with prejudice.

_____
Milton I. Shadur
Senior United States District Judge

Date: August 13, 2014